**MICHAEL C. ROBINSON (SB#120308)**
mrobinson@rdwlaw.com
**CYNTHIA ANN GOODMAN ESQ. (SB #105693)**
cynthiaanngoodman@gmail.com
**ROBINSON, DI LANDO**
**A PROFESSIONAL LAW CORPORATION**
800 Wilshire Boulevard, Suite 750
Los Angeles, California 90017-2687
Telephone (213) 229-0100
Facsimile (213) 229-0114

Attorneys for PLAINTIFF INVENTORY CAPITAL GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INVENTORY CAPITAL GROUP, INC., A California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAFECO INSURANCE, AMERICAN ECONOMY INSURANCE COMPANY, LIBERTY MUTUAL GROUP, and ROES 1 through 25,<br><br>Defendants. | CASE NO. CV 11-01330 PSG(CWx)<br><br>**TRIAL BRIEF RE LENDER'S LOSS PAYEE** |

PLAINTIFF INVENTORY CAPITAL GROUP, INC. hereby submits its trial brief re standing:

# I.

## THE LOSS PAYABLE ENDORSEMENT IS AMBIGUOUS

The policy at bar includes an endorsement naming plaintiff.  The title of the endorsement is "Loss Payable Provisions".  The term "loss payee" is used throughout the endorsement and in both the simple loss payee and lender's loss payee sections of the endorsement.

The first paragraph of the endorsement reads in part, "The following is added to the Loss Payment Property Loss Condition in Section 1-Property, <u>as shown in the Declarations or by an "A", "B" or "C" in the Schedule</u>: A. Loss Payable For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will: 1) Adjust losses with you: and 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear. B. Lender's Loss Payable 1. The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgage holder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as: a. Warehouse receipts b. A contract for deed: C. Bills of lading; or d. Financing statements..." ]*The schedule in the declarations does not indicate whether paragraphs A, B or C apply to plaintiff.*

The loss payable endorsement is ambiguous in three respects.  First, it uses the terminology "Loss Payee" to designate both simple and lender's loss payee.  By using the same term to define both simple and lender's loss payee, it is objectively reasonable to construe plaintiff's designation as loss payee in the declarations page to be consistent with a finding that it is a lender's loss payee.   Second, the actual policy at bar fails to designate in the declarations page which of paragraphs A, B or C apply to plaintiff.  And finally, the language providing that a Lender's Loss payee "is a creditor "with whom you have entered a contract for sale of Covered Property...." should be construed to apply to Tazpack, Inc. where it is strictly liable

to reimburse plaintiff for loss or damage of the goods [similar to a obligee under a mortgage to the lender].  The Court does not have to accept plaintiff's interpretation, since defendants adopted  this interpretation by the correspondence to plaintiff in connection with the loss.  Specifically,  the adjustor quoted the Lender's Loss Payee provisions of the policy even though the insurer was on notice that the agreement between plaintiff and Tazpack, Inc. was that of a bailor-bailee and even after a claim had been made and the adjustor had conferred with both his superiors and defense counsel.  If defendants could reasonably construe plaintiff as a Lender's Loss payee, then it seems clear on its face that the agreement either provides that plaintiff in fact a Lender's Loss Payeee or that the agreement is ambiguous.

## II.

## THE AMBIGUITY IN THE LOSS PAYABLE ENDORSEMENT IS INTERPRETED AGAINST THE DEFENDANTS

While the interpretation of any document involves a determination of the intent of those who created it, any uncertain language in an instrument will be interpreted against the one who caused the uncertainty to exist. *Diamond Bar Development Corp. v. Superior Court (1976) 60 Cal.App. 3d 330, 131 Cal. Rrtr.*  The rule that a contract must be interpreted most strongly against the party who prepared it if other rules of interpretation do not resolve an ambiguity is applied with particular force in the case of adhesion contracts. *Badie v. Bank of America (1998) 67 Cal.App. 4th 779, 79 Cal.Rptr. 2d 273.79*. Under California law, if ambiguity remains after applying ordinary and popular meanings of terms and after looking to expectations of reasonable insured, term is construed against the party who caused the ambiguity to exist, which, given policy of resolving ambiguities in favor of coverage, is almost always the insurer. *Oakland-Alameda County Coliseum, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA, N.D. Cal. 2007, 480 F. Supp. 2d 1182.*

Here, defendants knew that they were insuring a warehouse, knew that Tazpack, Inc was a bailee and that the warehouse intended to cover the goods of others. Further, the loss payable endorsement specifically references "warehouse receipts" as one of the criteria to show ownership even though it is difficult to conceive of the circumstance where a sale of goods to a warehouse would be covered by a warehouse receipt unless the a bailee/bailor relationship was contemplated by the policy. Consequently, plaintiff was either obviously a Lender's Loss Payee under the policy or alternatively the policy was ambiguous as to plaintiff's capacity, in which case, the policy should be construed against defendants and in favor of a finding that it was a Lender's Loss Payee.

## III.

## PLAINTIFF DID NOT NEED TO PAY ADDITIONAL CONSIDERATION TO BE NAMED AS A LENDER'S LOSS PAYEE

In *Martin v. World Sav. And Loan Ass'n (2001) 92 Cal. App. 4th 803, 112 Cal.Prtr. 2d 225,* the property owner argued that the lender's requirement that it be named as a lender's loss payee on earthquake insurance was not supported by consideration since the property owner was not required by the terms of the loan agreement to obtain earthquake insurance in the first instance. The California Court of Appeal rejected this argument and held that a lender's loss payee endorsement need not be supported by additional consideration as follows,

"Generally speaking, the rule is to the contrary: one promise in a contract "may be consideration for several counter promises." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 215, p. 224; accord, 2 Corbin on Contracts (rev. ed.1995) § 5.12, pp. 56–57 ["A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The consideration is not rendered invalid by the fact that it is exchanged for more than one promise. If it could support each of the promises taken separately

it is consideration for all of them." (Fns.omitted.)]; 3 Williston on Contracts (4th ed.1992) § 7:49, p. 761"] (p. 809 )

Here, plaintiff's requirement that Tazpack, Inc. obtain insurance for the brake pads as a condition to plaintiff's agreement to store its brake pads at Tazpack, Inc. was sufficient consideration to support plaintiff being named either as a simple or lender's loss payee.

## IV.

## THE POLICY LANGUAGE SUPPORT THIS COURT FINDING THAT THE LOSS PAYABLE ENDORSEMENT NAMED PLAINTIFF AS A LENDER'S LOSS PAYEE

A standard loss payable clause provides that indemnity for a covered loss is payable to a secured creditor or other person holding an interest in the property, to the extent of the person's interest in the property, <u>regardless of any act or neglect by the insured</u>. *Home Savings of America v. Continental Ins. Co. (2001) 87 Cal. App. 4th 842, 843. 87 Cal.App.4th 835, 104 Cal.Rptr.2d 790*; *4 Couch on Insurance*, *Sections 65:8-65:9, pp. 65-16 to to 65-19.* (*Home Savings, at p. 842*.) <u>Thus the substantive difference between a determination that ICG was a Lender's Loss Payee (as opposed to a simple loss payee) is that plaintiff would not be subject to any exclusions enforceable as against Tazpack, Inc.</u> The Loss Payable endorsement provides in part, "The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgage holder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as: a. Warehouse receipts b. A contract for deed: C. Bills of lading; or d. Financing statements..."

Here, plaintiff had both an ownership interest and a secured interest in the brake pads as evidenced by the Master Procurement Agreement and UCC. Consequently, plaintiff's interest in the covered property satisfied the latter part the lender's loss payee endorsement provision. The singular provision remaining "with whom you

have entered a contract for the sale of Covered Property," is likewise satisfied because Tazpack, Inc., like any mortgagee taking a loan on insured property, was strictly liable to pay plaintiff for the loss of the insured property even where the property was lost or destroyed due to no fault on the part of Tazpack, Inc. [See California Commercial Code Section 7202 which provides in pertinent part,".... (b) Unless a warehouse receipt provides for each of the following, the warehouse is liable for damages caused to a person injured by its omission:   (1) a statement of the location of the warehouse facility where the goods are stored;   (2) the date of issue of the receipt;   (3) the unique identification code of the receipt;...   (6) a description of the goods or the packages containing them;   (7) the signature of the warehouse or its agent."... for the brake pads which it entrusted to Tazpack for storage but failed to inventory."   As a practical matter, there is no difference between the liability of Tazpack, Inc. [which failed to issue a warehouse receipt for the stored brake pads] and a homeowner liable for a mortgage after his or her house has burned down.

     Defendants assertion that endorsement should be interpreted as a simple and not lender's loss payee is similar to the stance taken by the insurer in *Home Savings of America v. Continental Ins. Co. (2001) 87 Cal. App. 4th 842, 843*. There, the insurer argued that the policy language providing: "If a mortgagee is named in this policy, any loss payable under *Building Coverage* shall be paid to the mortgagee and you, as interests appear," barred coverage in view other provisions under the policy which defined *Building Coverage* as "any building at an insured location. You must own the building and use it mainly as a private residence."  Based upon this language, the insurer argued that since the named insured did not use the building as a residence, the lender's loss payee endorsement did not apply.  In rejecting this argument, the appellate court held that, "...this appears to be a distinction without a difference, at least for our purposes. Both the Continental and ISO policies state that a change in ownership, occupancy, or risk will not defeat coverage for the mortgagee, provided that the mortgagee notifies the insurer of any change of

ownership, occupancy, or risk of which the mortgagee is aware. <u>Even though ownership and occupancy are requirements of coverage as far as the named insured is concerned under the Continental *Building Coverage* clause, a change in ownership and occupancy will not defeat coverage for the mortgagee, provided the mortgagee gives notice of the changes of which it is aware</u>." (  ) (Emphasis added)

In effect the appellate court rejected an interpretation of the policy which did not substantively change the insurer's risk.  Similarly, there is no substantive distinction in the risk undertaken by defendants arising out of Tazpack, Inc.'s liability to plaintiff for goods stored at its warehouse as opposed to the liability of a mortgagee to pay a mortgage to a lender for a house that burned down.   Thus the provision requiring that there be a contract for sale should not defeat the interpretation that on these facts the ambiguity should be interpreted in favor finding that plaintiff was a lender's loss payee.  Indeed, had the endorsement expressly designated plaintiff as a lender's loss payee, the absence of a contract for sale would not be sufficient to render the endorsement unenforceable.

As noted by the court in *Home Savings,* "While all clauses of an insurance contract should be construed together, and the provisions of a mortgage clause must be read together and harmonized with the balance of the policy when reasonably possible, the mortgage clause must prevail in the case of an irreconcilable conflict between it and other provisions of the policy. That is, insofar as the provisions of the policy are inconsistent with, and antagonistic to, the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his or her rights." (4 Couch on Insurance (3d ed. 1997) § 65:45, p. 65-68, fns. omitted.)

In view of the ambiguity in the policy, plaintiff's security interest in the insured brake pads, and Tazpack, Inc.'s capacity as a warehouseman with special liabilities attendant thereto, the endorsement at bar should likewise be interpreted most favorably to plaintiff and in support of a determination that plaintiff is deemed a Lender's Loss Payee under the policy.

1
2  Dated:  February 20, 2012                ROBINSON DI LANDO
3
4                                  By:  /s/ Michael Robinson
                                        Michael C. Robinson, Esq.
5                                       Cynthia Ann Goodman, Esq.
                                        Attorneys for Plaintiff Inventory
6                                       Capital Group, Inc.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**TRIAL BRIEF RE LENDER'S LOSS PAYEE**

# AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by Robinson Di Lando, APLC, whose business address is 800 Wilshire Boulevard, Suite 750, Los Angeles, California 90017-2687.

On **[ENTER DATE],** I served on the parties of record in this action the foregoing document described as: **[ENTER DOCUMENT NAME]** on the interested parties by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Craig S. Simon, Esq. | **(Attorneys for Defendants** |
| Jeffrey S. Crowe, Esq. | **AMERICAN ECONOMY** |
| Kathleen Whitmore, Esq. | **INSURANCE COMPANY,** |
| **BERGER KAHN,** | **SAFECO INSURANCE** |
| **a Law Corporation** | **COMPANY OF AMERICA)** |
| 2 Park Plaza, Suite 6th Floor | |
| Irvine, CA 92614-8516 | |

Tel: (949) 474-1880
Fax: (949) 474-7265

**[X] BY MAIL** – (CCP Sect. 1013a(3)) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **[ENTER DATE],** at Los Angeles, California.

_____
Teresa De Paz

---

- 9 -
**TRIAL BRIEF RE LENDER'S LOSS PAYEE**